Ricky C. Barnes
1821 N. 114th Dr.
Avondale Arizona 85392
(623)-521-4699
Email: Htownrod@yahoo.com

Plaintiff, Representing Self

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Ricky Carl Barnes,

                Plaintiff,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF VETERAN
AFFAIRS, a body politic,

                Defendants.

Case No. CV-18-02636-PHX-SPL

**COMPLAINT FOR PERSONAL INJURUES AND MENTAL ANGUISH DUE TO MEDICAL NEGLIGENCE**

Plaintiff, RICKY BARNES, is an adult individual residing in Maricopa County Arizona alleges against defendant as follows:

### GENERAL ALLIGATIONS

1. This action arises under the Federal Tort Claims Act of 1948, 62 Stat. 982, 28 U.S.C. 1346(b), 2671, et seq.

2. Pursuant to 28 U.S.C. 1391(a), venue is proper in the Judicial District where a substantial part of the events or omissions giving rise to the claim occurred. In the above-entitled action, the Plaintiff, RICKY BARNES, is bringing this suit based upon the rendering of improper medical services, including, but not limited to, the denial of access to medical care, then the failure to provide appropriate, timely, and competent medical care at Carl T. Hayden VA Medical Center in Phoenix, Arizona (VAMC).

Therefore, venue is proper in the District of Arizona.

3. This is an action for money damages for injuries caused by the negligent acts or omissions of employees and/or agents of the United States of America while acting within the scope of their office, employment or agency. This Court has jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C §1346.

4. The defendant, the United States of America, is the proper party to this action. A tort claim for damages for personal injury and mental anguish was filed on behalf of RICKY BARNES, pursuant to 28 U.S.C 2401 and 28 U.S.C 2671 through 2680. The defendant is liable in the same manner and to the same extent as Christopher S. Cranford, M.D. (hereinafter "Dr. Cranford") and under like circumstances had plaintiff been allowed to sue him individually under Arizona law for the care and treatment more fully described below.

5. This Tort Claim arose from acts and omissions that occurred at the Carl T. Hayden VA Medical Center (VAMC) and the Phoenix Regional Veterans Benefits Administration (VBA), Phoenix, Arizona, when RICKY BANRES, a decorated veteran of over 15 years of services in the United States Air Force, was repeatedly denied access to medal care at the VAMC, then provided with negligent medical care resulting in injuries, harms, losses, and damages to plaintiff alleged hereafter occurred in the judicial district, Phoenix, Arizona.

6. The appropriate federal agency has failed to make final disposition of plaintiff's claims within six (6) months and any extension thereof after the claim were filed, thus constituting a final denial of the claims.

7. More than six (6) months have passed without a response by the United States of America to accept or deny the claims presented in the Form 95. As such, the claims are deemed denied.

8. Defendant, United States of America is a body politic and governmental entity that, at all times material hereto, through its Department of Veterans Affairs, owned and operated the VAMC located in Phoenix, Arizona.

9. Carl T. Hayden VA Medical Center, (VAMC) its physicians, nurses, employees, agents, and representatives, were at all times material hereto, acting as agents and employees of

Defendant, the United States of America and were within the course and scope of their agency and employment with Defendant, the United States of America who provided health care and hospital and medical services to eligible members of the public at the VA Hospital including the plaintiff, a veteran.

10. Dr. Cranford and VAMC was at all times material hereto, a health care provider, licensed and authorized to practice medicine and orthopedic surgery in the State of Arizona before and after he was found guilty of breaching the applicable standard of care April 1, 2015 at the VAMC.

11. Furthermore, at all times material hereto, Dr. Cranford, its physicians, nurses, employees, agents, and representatives, were employees of defendant United States of America or were acting on behalf of the VA Hospital, a federal agency, in an official capacity, temporarily or permanently, in the service of the United States of America, and were acting within the scope of their employment or office and for the benefit of said defendant at the time they provided medical care, services and treatment to plaintiff Ricky Barnes alleged hereafter.

12. Untimely leading to denied medical care, services, treatment, and future employment to plaintiff Ricky Barnes alleged hereafter.

13. All of care Dr. Cranford and VAMC employees provided to the plaintiff was provided at the VAMC in Phoenix Arizona.

14. Defendant United States of America is liable for the acts and omissions of Dr. Cranford, its physicians, nurses, employees, agents, and representatives, alleged hereafter.

15. Dr. Cranford's its physicians, nurses, employees, agents, and representatives, acts and omissions are imputed to the defendant as a matter of law.

## FACTUAL BACKGROUND

16. 01/18/2012, plaintiff was involved in a car accident requiring medical care, including right shoulder care.

17. On or about 01/25/2012 after following non-VA medical facility directions, Plaintiff reported to VAMC seeking additional medical care. The VAMC confirmed plaintiff

(also referred to as "patient" hereafter) had pain mostly on the right side of his body including right shoulder.

18. On or about 1/26/2012 patient reported to VAMC primary doctor, Jennifer A. Delzell, MD for additional care related to Motor Vehicle Accident (MVA). After being denied X-rays by Dr. Delzell as her diagnose was to conclude muscle spasms only, patient insisted x-rays/MRIs be ordered to provide additional data to conclude medical condition to the right side of his body.

19. On or about 01/28/2012 patient became concerned due to increased pain in right shoulder and requested another appointment with primary doctor to request a referral to Orthopedic. Without reason patient's appointment was scheduled April 2014, approximately 3 months later.

20. On or about 01/30/2012, Dr. Delzell refused to order MRIs even when patient complained of serve pain in right shoulder. After filing a grievance with VAMC patient advocate office, weeks later the MRI's were finally ordered.

21. On or about 02/07/2012, patient called in complaining about lack of care and appointments being scheduled by phone instead of in person. Patient also complained about the lack of timely care he was receiving at the VAMC.

22. On or about 02/14/2012, patient reported back to Dr. Delzell for additional care. After explaining the level of pain to Dr. Delzell she stated, "What do you want me to do?" Dr. Delzell was unconcern with providing addition care. Patient requested a referral to Orthopedics. Instead, patient was scheduled for physical therapy.

23. On are about 04/23/2012, (Scheduled telephone appointment) Patient once again request Orthopedics department for right shoulder. Dr. Delzell diagnose was tendonitis – supraspinatus. Orthopedics was once again delayed as Dr. Delzell requested pcp (patient care provider) evaluation is needed prior to Orthopedics. The evaluation was previously conducted 01/26/2012.

24. On or about 04/25/2012 (Patient Walk-in) patient complained about ongoing pain. He was directed to do a walk-in by VAMC ER. Patient did a walk-in but never was allowed to see Dr. Delzell. However, patient was interviewed by Karen Celestine. Dr. Delzell assistant and was informed to keep May 18, 2012 appointment.

25. On or about 05/14/2012 patient was contacted by VAMC attempting to change patient scheduled walk-in appointment to a phone appointment. Patient denied that option.

26. On or about 05/18/2012, Dr. Delzell diagnose to patient's right shoulder was a small joint effusion with no tears. Information came from outside doctor. Dr. Delzell still believed patient's only issues to right shoulder were spasms and inflammation. No additional information concerning right shoulder was provided.

27. FYI: (Another note) On or about 06/22/2012 Patient reported to the VAMC for an unrelated MVA medical issue. The annotations clearly state the patient has been having these episodes since the 1980s. The VAMC associated the 06/22/2012 visited with the 01/18/2012 MVA and charged patient $2784.42 without a full explanation. Those funds were never reimbursed to patient.

28. On or about 08/02/2012, (7) months later from MVA, physical theory was scheduled. Additional medical issues arose from spreading to numbness to elbow and hand. Still no Orthopedics appointment scheduled as requested by the patient. Patient was informed his right shoulder only needed strengthening.

29. On or about 10/30/2012, patient informed VAMC physical therapy department right shoulder pain/condition was worsening. Still no Orthopedics appointment scheduled as requested by patient. Patient discharged from physical therapy.

30. On or about 01/03/2013, patient spoke with Dr. Delzell nurse assistance, Kristen Williams, in hopes to review prior right shoulder concerns before 01/08/2013 appointment since the massive delays to see Dr. Delzell were extensive. No future plans for care of right shoulder were implemented since patient last appointment with Dr. Delzell 05/18/2012.

31. On or about 01/08/213 Patient saw Dr. Delzell for right shoulder pain, in which no additional details were provided as Dr. Delzell continue to state right shoulder issues are only spasms and inflammation. Orthopedics appointment finally scheduled a year later.

32. On or about 01/11/2013, patient saw Dr. Stephen Garner, Orthopedics. His assessment was speculative without a diagnose and without additional x-rays/MRIs. When MRI was order 01/11/2013 for right shoulder, patient requested a cortisone injection during the arthrogram procedure, but was denied. Patient was informed right shoulder

condition was inflammation and did not require a cortisone injection. Dr. Garner concurred with diagnose findings of x-rays 01/19/2012 and 05/07/2010 mild GH.

33. On or about 01/29/2013 patient returned to Dr. Garner. Patient was informed he allegedly now has two small tears. Patient requested arthroscopy right shoulder surgery and was denied. Patient believed a simple arthroscopy could reveal what is actually the condition of his right shoulder. Patient was transferred to a new VAMC doctor 03/21/2013 name Dr. Christopher Cranford. Outsourced care was denied.

34. (Patient Medical Disc Records 2018 compared to 2016 were altered proving patient's allegations of medical records constantly being altered/changed to deter patient from accurate account of events.) On or about 02/11/2013 patient requested non-VA care for simple scope surgery due to delays, misdiagnoses and misleading information. once again patient was denied. Next VAMC appointment 03/21/2013.

35. Patient medical records are riddle with "ADDENUMS". Patient has complained to Head Director his personal medical records are constantly being altered and per VAMC employee can be done without detection.

36. On or about 03/21/2013 patient once again requested right shoulder scope surgery but was denied. Dr. Cranford concluded patient was "too young" for surgery at this time, but a scope surgery could be discussed. Due to pass Court experiences Dr. Cranford should have recognized patient request to be part of the decision-making process. Patient was never allowed to be part of the decision making of his medical needs. Patient was informed he would not be offered surgery, but it could be considered. Dr. Cranford was aware patient condition could worsen without surgery. Dr. Cranford never provided patient with any additional details or future appointments or medical care.

37. On or about 03/22/ 2013 One day after seeing Dr. Cranford, patient requested outsourced care through fee services as his care for right shoulder surgery at the VAMC was being delayed and denied.

38. On or about 07/14/2013 patient medical records were knowingly injected with fabricated annotations stating patient denied surgery at the VAMC. Once the patient had knowledge of the fabricated annotation he filed an appeal with Washington Office of General Counsel and the deceptive despicable annotation was removed.

39. On or about 07/17/2013 patient saw a non-VA doctor (Amit A Sahasrabudhe, MD) at Arizona Sports Medical Center (ASMC) who concluded proper innovative actions could benefit right shoulder issues if proper steps were implemented in a timely manner.

40. On or about 07/17/2013 Dr. Admit requested sleep study as precautionary to move forward with right shoulder surgery.

41. On or about 08/12/2013 patient VAMC scheduled appointment for 08/13/2013 to discuss right shoulder issues was canceled leading to additional delays.

42. On or about 08/26/2013 patient once again requested sleep study from the VAMC. VAMC delayed the request for unjustifiable reasons. Another process deterrence right shoulder surgery. Dr. Delzell had full knowledge of why sleep study was requested from non-VA Dr. Admit and she continued to delay the consult.

43. On or about 08/28/2013 patient contact VAMC with concerns of his right shoulder delays. VAMC continued to delay care after patient had met all requirements. Patient reported to Patient Advocate for intervention.

44. On or about 11/19/2013 patient reports to mental health to voice concerns over delayed right shoulder care, delayed sleep study, and other VAMC issues.

45. On or about 01/05/2014 patient reports to Patient Advocate Office to voice his concerns over proper and timely medical care. This campaign for proper and timely medical care continued with denied care stemming from in person and phone calls attempting to obtain proper care that would be ongoing until 2017.

46. On or about 02/24/2014 patient reports to VBA and to VAMC with documentation attempting to join the workforce again, including completing his college degree. This will become significant later 01/11/2017 as the denials continue.

47. On or about 02/25/2014 at the recommendation of the Patient Advocate office patient reports to mental health provider, Carrie Kunberger, voicing his concerns with unmet VAMC needs within the VAMC.

48. On or about 04/14/2014 patient response to sleep study has gone unanswered. Patient provided a letter to VAMC requesting a response so that right surgery shoulder can be scheduled with outside doctor.

49. On or about 04/15/2014 patient provides VAMC Head Director with a letter stating the lack of care he is receiving at the VAMC and could there be intervention.

50. On or about 05/18/2014 pages missing from requested medical file dictating veteran's dissatisfactory with VAMC standards.

51. On or about 06/17/2014 patient has scheduled appointment with Dr. Delzell. No additional information given on right shoulder or additional care.

52. On or about 07/24/2014 patient reported to an appointment for Colonoscopy. VAMC doctor Charles Beymer, posted fabricated annotations in patient's medical records stating patient refused VAMC services for two years (This also will become important later proving collusion). After providing the VA recording to Washington Office of the General Counseling for investigation it was concluded Dr. Beymer knowingly fabricated patient's medical records. The annotations were removed.

53. On or about 08/05/2014 patient was contacted by VAMC to question why he scheduled an appointment for 08/11/2014. Patient explained it was for updates and to check on his right shoulder issues.

54. On or about 08/11/2014 patient received "phone call" canceling his appointment by clinic due to staffing reasons allegedly.

55. On or about 08/11/214 VAMC PCP provider, Dr. Delzell, determined she would decide next step in care. Patient was never notified.

56. On or about 11/21/2014 patient contacted Patient Advocate office to intervene to get an appointment scheduled with primary care Dr. Delzell.

57. On or about 11/28/2014 Patient Advocate intervene. After clinic could not justify reason why appointment was not scheduled for patient an appointment was scheduled 12/10/2014.

58. On or about 12/10/2014 patient had concerns with medical care and with right shoulder concerns. Dr. Delzell annotated patient medical records, [sic] "Pt very quick to call Pt Advocate when he does not get what he wants in the time frame he deems appropriate." This attacking note was reported to the Patient Advocate office and to the Head Director of VAMC. This unprovoked statement was later stricken from patient's medical records

deemed unwarranted. Patient would never see saw Dr. Delzell again due to attacks within private VAMC emails.

59. On or about 04/07/2015 VAMC attempted to scheduled psychological testing for patient without a valid explanation or reason. On or about 04/13/2015 patient was contacted by VAMC canceling psychological testing as no valid adequate clarification for the testing could be given to patient as patient believed a process to defame patient's character continues due to requesting proper and timely care. Still no information concerning right shoulder was given to patient by the VAMC.

60. On or about 04/07/2015 VAMC contacted patient canceling scheduled psychological testing as the VAMC could not explanation to patient why the testing was being FORCED upon patient. The VAMC continued to reframe from responding to delayed and denied care patient requested.

61. On or about 05/15/2015 patient was once again contacted by VAMC stating another attempt to schedule psychological testing was not deem necessary. VAMC still could not explain to patient why several attempts were being made to schedule tests which did not involve the patient in the decision making.

62. On or about 05/18/2015, patient continues to contact VAMC doctors, Dr. Delzell and Dr. Cranford's department attempting to receive proper and timely care for right shoulder. Denials and delays continues.

63. On or about 06/01/2015 patient spoke with VAMC employee Ms. Cross addressing delays, denials, and proper and timely care. Ms. Cross stated the bad doctors at the VAMC may outweigh the good doctors. Even though Ms. Cross agreed with patient concerns that phone call lead to no resolutions as no VAMC employees were held accountable.

64. On or about 09/01/2015, patient continued to be denied proper and timely medical care. Patient Advocate was made aware of the delays. Attempts by patient and Patient Advocate to get care inside and outside VAMC failed. Dr. Delzell requested patient be reassigned to new provider.

65. On or about 09/03/2015, Dr. Delzell, wrote an email to the Patient Advocate and other VAMC employees stating, [sic] Due to ongoing tort claim I will await recommendations

from Counsel regarding this patient." Patient was denied medical care and never saw Dr. Delzell again.

66. On or about 09/10/2015 patient was provided a new pcp provider which starts the process all over again of seeking consults and orthopedics care, which must be requested by the new provider.

67. On or about 09/23/2015 Due to massive delays and denials patient's Non-VA surgery consult was discontinued by Dr. Delzell who was no longer patient's pcp provider.

68. On or about 09/29/2015, patient reported to VAMC orthopedics department for updates concerning outsourced consult as it was never inputted into the VA system for outside non-VA care.

69. On or about 10/06/2015 patient new pcp provider Dr. Will Innocent approved non-VA MRI and Non-VA right shoulder surgical procedure.

70. On or about 10/15/2015 patient was contacted by VAMC informing him still waiting for non-VA surgeon for right shoulder. MRI not yet order.

71. On or about 10/23/2015 VAMC could not schedule patient in a timely manner with Dr. Cranford, so non-VA doctor was approved.

72. 11/24/2015 patient appointment for non-VA care has once again delayed. Patient informed VAMC and Tri-West of this delay yet, nothing was input into the system.

73. On or about 12/16/2015 patient saw non-VA doctor Dr. Admit. A plan was implemented to receive right shoulder injections until right shoulder consult can be approved through the VAMC.

74. On or about 01/21/2016 patient sees new provider Dr. Innocent and patient would not see him again due to reassignment to another VAMC pcp provider Dr. Teresa Getz. Patient had no knowledge of this change.

75. On or about 01/27/2016 Patient approved outsource care was been redirected back to the VAMC without justification. The same department who refused to perform right shoulder surgery for patient. Patient was not informed of this process.

76. On or about 04/19/2016 patient confirms with VAMC he was never informed of new

provider change to Dr. Teresa Getz. New appointment scheduled 05/31/2016. That appointment would also be canceled, which would not be documented within patient medical record. Also, leading to additional delays.

77. On or about 07/08/2016 patient sees new provider. Dr. Teresa Getz. Patient would not see Dr. Getz again due to being provided a new pcp provider.

78. On or about 07/26/2016 patient once again was changed to a new provider, Dr. Alper. Only to later patient to be transferred to another pcp provider outside the main VAMC.

79. On or about 08/23/2016 patient reports to mental health provider Dr. Kunberger, as suggested by Patient Advocate to report additional defamation of character by a VAMC employees 07/27/2016. Patient was being forced into an anxiety psychological testing process when it was deemed not necessary by the VAMC Disruptive Behavioral Counseling team. VA recordings were heard by Patient Advocate proving the patient was falsely accused in an attempted to "taint" his character. This will become relevant later.

## CAUSE OF ACTION
(Medical Negligence)

80. On or about 12/12/2016 after campaigning for surgery for some time patient was extremely traumatized to hear for the first time his only option for right shoulder surgery is total shoulder replacement. Even the option for a simple scope surgery previously stated by Dr. Cranford was no longer an option. This was a devastating blow to the patient.

81. On or about 1/11/2017 adding to patient's onsets at the VAMC he was informed by mental health provider Ms. Kunberger he would not be approved for employment due to an anxiety test that was not required. Ms. Kunberger continued to FORCE this test upon patient that was not deemed not necessary by the VAMC DBC team and VAMC Head Director Ms. RimaAnn Nelson. Ms. Kunberger was fully aware FORCING this test upon the patient was not deemed necessary.

82. On or about 1/24/2017 new VAMC x-rays illustrates patient right shoulder condition had been declining since 2015 and it appears right shoulder surgery would have ceased

the decline of patient's condition if delays and denials would not have been the driving forces by the VAMC.

83. On or about 1/24/2017 patient back in physical therapy receiving RS4i unit for right shoulder until surgery is scheduled down the road as now that was his only option.

84. On or about 2/17/2017 patient receives new mental health provider due to being denied employment, and lack of proper annotations of the retaliation/delays taking place within the VAMC. After Ms. Kunberger was relieved from her duties as the provider for the patient, without reason, Ms. Kunberger sent Dr. Daniel Darby, patient's new provider, a note stating veteran could benefit from home telehealth to monitor his depression. Ms. Kunberger attempts to mislead the new provider into believing patient needed telehealth or even an anxiety test. Her attempts failed. After Ms. Kunberger was no longer patient's provider, she continued to verbally attack veteran, including stating patient has no business being at the VAMC. This was reported to the Patient Advocate office, the Head Director's office and was deemed not within the standards of caring for patients.

85. On or about 03/27/2017 patient returned to Dr. Cranford to determine how his right shoulder deterioration became to be. Dr. Cranford stated to the patient the reason the patient right shoulder has deteriorated to needing total shoulder replacement is due to patient refusing surgery. Patient was devastated to hear Dr. Cranford's response when patient attempted several times in the past to get the VAMC to perform the surgery or have the surgery performed by an outside non-VA doctor. The Patient Advocate was aware of these massive delays and was also devastated at the delays taking place against the patient.

86. Had the VAMC properly seen, evaluated, diagnosed, and treated MR. RICKY BARNES when he initially sought appointments for his signs and symptoms, MR. BARNES's right shoulder could have been protected. Further, MR. BARNES would not have to undergo radical future surgery with its attendant risks, complications, and resulting permanent injuries, pain and suffering, and lost wages.

87. Dr. Cranford and VAMC knew or should have known without early surgery patient's right shoulder would continue to deteriorate to the point of needing a total shoulder replacement.

88. Dr. Cranford and VAMC had a duty to timely evaluate their patient to determine whether they, in fact, offer the veteran timely care or refer the patient for said evaluation if they were unable or unwilling to perform timely evaluations.

89. Dr. Cranford and VAMC knew or should have known that if damage had occurred to the patient's right shoulder, time was of the essence and patient needed an immediate referral to a surgeon who could repair or attempt to repair the right shoulder.

90. Despite knowing that it was foreseeable that Dr. Cranford and VAMC may have damaged patient's right shoulder by delayed/denied care, time was of the essence in repairing patient's right shoulder. Dr. Cranford and VAMC failed and refused to investigate whether they caused additional injury to patient and to obtain proper evaluation and treatment for patient.

91. Dr. Cranford and VAMC fell below the standards of care of a reasonable and prudent orthopedic shoulder/provider and was negligent and directly caused patient to suffer damages more fully described below.

92. Dr. Cranford and VAMC were required to examine, evaluate, assess, diagnose, care for, manage, operate on and treat patient Ricky Barnes with the care, skill, learning and thoroughness expected as reasonable healthcare providers in their profession or class to which each physician belongs within this State, in the same or similar circumstances.

93. In their examinations, evaluations, assessments, diagnoses, care, management and treatment rendered to patient Ricky Barnes, Dr. Cranford and VAMC failed to exercise that degree of care, skill, and learning expected of a reasonable and prudent healthcare provider in the profession or class to which they belong.

94. Dr. Cranford and VAMC failed to comply with the applicable standards of care resulted in damage to patient right shoulder and delay in diagnosis and treatment of said injury.

95. As a direct and proximate result Dr. Cranford and VAMC failure to comply with the applicable standard of care, plaintiff has suffered severe permanent injuries and disabilities.

96. As a direct and proximate result of the forgoing, patient has experienced and will experience in the future, bodily injury, pain, discomfort, suffering, disability, emotional distress, disfigurement, impairment, and the loss of employment and enjoyment of life.

97. As a direct and proximate result of the foregoing, patient has incurred, and will incur in the future, expenses of necessary medical and other care, treatment, and services.

98. As a direct and proximate result of the foregoing patient has lost the ability to move forward seeking employment to obtain and complete his full retirement in the future.

99. Further, as a result of Dr. Cranford and VAMC's negligent acts and omissions, patient has suffered other foreseeable special damages including expenses associated with protecting his home due to VAMC threats and attacks on social media, and future relocation to protect his family from VAMC threats.

100. As a direct and proximate result of the forgoing, patient has sustained special and general damages in a sum to be determined in the trial of this matter, which is in excess of the minimal jurisdictional limit of the Court.

101. Wherefore, MR. BARNES, prays for judgment against Defendant, as follows:

102. For past and future general damages according to proof;

103. For past and future special damages to be incurred according to proof;

104. For other expenses to be proven at time of trial;

105. For costs of suit and reasonable possible attorney's fees incurred herein; and

106. For such other and further relief as the Court may deem just and proper.

DATED this 21st day of August 2018

By _____Ricky C. Barnes_____

Ricky C. Barnes

1821 N. 114TH Dr.

Avondale, AZ 85392

*Plaintiff*