WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ricky Carl Barnes, | No. CV-18-02636-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Pending before the Court is Defendant United States' Motion for Summary Judgment (Doc. 58). Plaintiff filed a document in response (Doc. 61),[1] and Defendant filed a Reply (Doc. 64). The matter is fully briefed.

**I.   Background**

This medical malpractice case is about *pro se* Plaintiff Ricky Barnes, his right shoulder, and the treatment he received from Veteran's Administration ("VA") physician Dr. Christopher Cranford. As alleged in the Complaint, Plaintiff injured his shoulder in a

---

[1] Plaintiff captions this document his "Counter Motion for Summary and Plaintiff's Response to Defendant's Motion for Summary." (Doc. 61). Defendant has moved to strike the portions of Plaintiff's filing that may be considered a separate motion for summary judgment because Plaintiff made the filing eight days after the deadline for dispositive motions. (Doc. 63 at 2). All courts are obligated to construe *pro se* filings liberally, which "means courts must frequently look to the contents of a *pro se* filing rather than its form." *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020). Upon review, the Court finds that the content of Plaintiff's filing is really that of a response, not a counter motion for summary judgment. The fact that Plaintiff made this filing after the deadline for dispositive motions and his assertion that "there is genuine dispute over material facts, which will be proven during court proceedings" support this conclusion. (Doc. 61 at 2). The Court will therefore construe Plaintiff's filing as a response. Thus, the Court will grant Defendant's Motion to Strike (Doc. 63) to the extent that the Court will disregard language in Plaintiff's filing (Doc. 61) that asserts a counter motion for summary judgment.

2012 car accident. (Doc. 1 at ¶ 16). For part of his treatment, Plaintiff went to the VA Medical Center in Phoenix, Arizona and saw several doctors, including Dr. Cranford. (*Id.* at ¶¶ 5, 17, 33).

Plaintiff alleges that in March 2013, he requested an arthroscopy right shoulder surgery, and Dr. Cranford agreed to discuss the procedure. (*Id.* at ¶¶ 33, 36). Medical records provided by Defendant also show Dr. Cranford suggested Plaintiff consider the arthroscopy. (Doc. 58-1 at 5). The same records show that in August 2013, Plaintiff elected to have the arthroscopy surgery done by Dr. Amit Sahasrabudhe, an outside provider and Plaintiff's expert witness in this case. (*Id.* at 4). Plaintiff requested that the VA pay for this surgery, and VA staff advised Plaintiff he would receive an authorization by mail once approved. (*Id.*) Plaintiff still had not undergone arthroscopy surgery when, in 2016, he visited Dr. Cranford to determine the cause of further deterioration in his shoulder's condition. (Doc. 1 at ¶ 80). At that meeting, Plaintiff alleges Dr. Cranford said he would need total shoulder replacement surgery due to Plaintiff refusing prior arthroscopy surgery. (*Id.*)

After Plaintiff filed his August 2018 Complaint, Defendant filed a Motion to Dismiss in which it argued, in part, that the Court lacked jurisdiction "to the extent Plaintiff is challenging the timeliness of the processing of his request for authorization of payment for non-VA shoulder treatment" because the Board of Veterans' Appeals has sole jurisdiction to review such claims. (Doc. 16 at 1–2). On February 12, 2019, the Court heard oral argument on the matter and, after Plaintiff conceded he was not making a complaint related to payment or non-payment for medical treatment, granted Defendant's Motion. (Doc. 30). As a result of that Order, Plaintiff's only claim is for Dr. Cranford's alleged medical malpractice. (*Id.*)

Plaintiff brings this claim under the Federal Tort Claims Act ("FTCA"). (Doc. 1 at ¶ 1). He claims Dr. Cranford committed malpractice by failing to comply with the standard of care, resulting in damage to Plaintiff's shoulder. (*Id.* at ¶ 94). Defendant moves for summary judgment, arguing that Plaintiff lacks sufficient evidence to prove that Dr.

Cranford's actions fell below the standard of care. (Doc. 58 at 1–2). Plaintiff argues he has presented sufficient facts to substantiate his claim. (Doc. 61 at 26).

**II.     Summary Judgment Standard**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

**III.    Medical Malpractice Standard**

Under the FTCA, the United States is liable for the negligence of its employees, acting with the scope of their employment, according to the law of the place where the negligent act or omission occurred. 28 U.S.C. § 1346(b)(1). Here, the alleged wrongdoing underlying Plaintiff's claim of medical malpractice took place in Arizona. (Doc. 1 at ¶ 2). Arizona statute governs medical malpractice claims, which are defined as actions brought

against licensed health care providers for negligently providing health care. A.R.S. § 12-561(2). Such is the case here.

Under the statute, a plaintiff must prove two elements: (1) that the "health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances;" and (2) that "[s]uch failure was a proximate cause of the injury." A.R.S. § 12-563.

As to this first element, "[u]nless malpractice is grossly apparent, the standard of care must be established by expert medical testimony." *Rasor v. Nw. Hosp., LLC*, 403 P.3d 572, 575 (Ariz. 2017). To establish the standard of care, a plaintiff must present evidence of accepted professional conduct such that a jury could determine the applicable standard. *Bell v. Maricopa Medical Center*, 755 P.2d 1180, 1182 (Ariz. Ct. App 1988). Simply showing that a doctor disagrees with another doctor's course of treatment does not establish the standard of care because there may be more than one accepted school of thought among the medical community. *Borja v. Phx. Gen. Hosp., Inc.*, 727 P.2d 355, 357 (Ariz. Ct. App 1986).

For the second element, "unless a causal relationship is readily apparent to the trier of fact, expert medical testimony is normally required to establish proximate cause." *Ryan v. S.F. Peaks Trucking Co.*, 262 P.3d 863, 870 (Ariz. Ct. App. 2011). Clearly, under Arizona medical malpractice law, expert opinions are critical to a party's claim.

**IV.   Discussion**

Plaintiff's sole expert is Dr. Sahasrabudhe, who has authored several opinions for this case. (Docs. 58-1 at 42–48; 62-1 at 23–30; 62-4 at 36–39). Defendant makes two arguments concerning these opinions. One addresses their substance, and the other points out *pro se* Plaintiff's technical and procedural deficiencies in providing these opinions. As to the opinion's substance, Defendant argues that Dr. Sahasrabudhe, in fact, agrees with the course of treatment Dr. Cranford suggested in 2013. (Doc. 58 at 12). Defendant also argues that Dr. Sahasrabudhe does not show how Dr. Cranford's actions fell below the

standard of care. (Doc. 64 at 6). For the following reasons, the Court agrees with Defendant.

Dr. Sahasrabudhe opines that, after Plaintiff's 2012 accident, physical therapy, "medication management," or "an ultrasound guided biceps tendon sheath injection would have likely been beneficial." (Doc. 62-1 at 27). And if those procedures did not help, "surgery with an arthroscopic biceps tenotomy would have been appropriate." (*Id.*) Defendant provides medical records showing that Dr. Cranford suggested Plaintiff consider "scope" surgery (shorthand for arthroscopic surgery) in 2013. (Doc. 58-1 at 5). While Plaintiff claims his medical records were altered (Doc. 61 at 14), he provides no evidence indicating that the record containing the advice Dr. Cranford gave Plaintiff in March 2013 was altered. Furthermore, Plaintiff's own Complaint acknowledges that Dr. Cranford suggested considering arthroscopic surgery. (Doc. 1 at ¶ 36) ("Dr. Cranford concluded . . . a scope surgery could be discussed."). The record plainly shows that Plaintiff's only expert would give essentially identical medical advice to that which Dr. Cranford gave Plaintiff in 2013. As such, the Court finds that no reasonable jury could find Dr. Cranford's 2013 advice was negligent. *See Anderson*, 477 U.S. at 248.

Dr. Sahasrabudhe also claims that "Phoenix VA doctors ignored the option of right shoulder arthroscopic surgery to address the source of [Plaintiff's] symptoms . . . and only offered him a total shoulder replacement." (Doc. 62-1 at 27). While Dr. Sahasrabudhe does not specify when the "VA doctors" made this offer, the Court will draw the inference that this refers to the 2016 meeting with Dr. Cranford as alleged in Paragraph 80 in the Complaint. *See Anderson*, 477 U.S. at 255 (requiring the Court to draw justifiable inferences in a non-movant's favor). Dr. Sahasrabudhe opines that total shoulder replacement "would have been a great dis-service" to Plaintiff. (Doc. 62-1 at 27). Instead, Dr. Sahasrabudhe is "of the opinion that Mr. Barnes would benefit" from arthroscopy surgery, which he himself performed on Plaintiff in 2019. (*Id.*)

While Dr. Sahasrabudhe certainly disagrees with Dr. Cranford's allegedly proposed course of treatment, disagreement between two doctors, without more, does not establish a deviation from the standard of care. *See Borja*, 727 P.2d at 357; *Evans v. Bernhard*, 533

P.2d 721, 724 (Ariz. Ct. App. 1975) ("The personal and individualistic method of practice of this one doctor is not sufficient to establish a reasonable basis for any inference that [another doctor] has departed from the general medical custom and practice in the community . . . ."); *Harris v. Campbell*, 409 P.2d 67, 71 (Ariz. Ct. App. 1965) (finding that disagreement among surgeons as to a particular course of treatment is not proof that one has breached the standard of care). Nowhere in his opinions does Dr. Sahasrabudhe establish what conduct is acceptable in Arizona's medical community or how Dr. Cranford in particular fell below this standard or care. *See Potter v. H. Kern Wisner, M.D., P.C.*, 823 P.2d 1339, 1347 (Ariz. Ct. App. 1991) (accepting a patient's own physician's practice as some evidence of the standard of care when the physician testified that his practice is standard across the Arizona medical community). Therefore, the Court finds that Plaintiff's expert fails to show how Dr. Cranford breached the standard of care necessary for a medical malpractice claim.

Overall, the record shows Plaintiff's only expert would give essentially identical medical advice to that which Dr. Cranford gave Plaintiff in 2013. The record also fails to establish how Dr. Cranford's conduct fell below the standard of care when he proposed shoulder replacement surgery in 2016. Based on these facts, no reasonable jury could find that Dr. Cranford's actions fell below the standard of care. *See* A.R.S. § 12-563. It follows that Plaintiff fails to establish his medical malpractice claim because there is no genuine factual dispute that Dr. Cranford committed malpractice. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248. As this is Plaintiff's only claim, the Court need not discuss the matter further.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 58) is hereby **GRANTED**.

**IT FURTHER ORDERED** that because the content of Plaintiff's "Counter Motion for Summary Judgment" (Doc. 61) resembles that of a response to Defendant's Motion (Doc. 58), the Court will construe it as such, and it will **DENY** counter motions for

summary judgment therein.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 63) is **GRANTED** to the extent that the Court will disregard language in Plaintiff's filing (Doc. 61) that asserts a counter motion for summary judgment.

**IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 18th day of November, 2020.

Honorable Diane J. Humetewa
United States District Judge